UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NICHOLAS ALAN SPIRDIONE,

                Plaintiff,

v.

UNKNOWN PARTY #1 et al.,

                Defendants.
_____/

Case No. 1:24-cv-741

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis* in a separate order. Plaintiff has moved the Court to screen his complaint and to refer the case to the Court's *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program (PEM). (ECF No. 5.) For the reasons set forth herein, the Court will grant Plaintiff's motion in part. The Court will screen Plaintiff's complaint; however, because the result of the screening is dismissal of the complaint, the Court will deny Plaintiff's request to refer the case to PEM.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

<u>**Discussion**</u>

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues Unknown Party #1 (identified as General Office Assistant J. Doe), General Office Assistant Unknown Brown, and "ICF's Mailroom." (Compl., ECF No. 1, PageID.1–2.)

Plaintiff alleges that on February 11, 2024, Plaintiff sent legal correspondence to the 50th Judicial Circuit Court in Chippewa County, Michigan. (*Id*., PageID.3.) On March 21, 2024, the Chippewa County Clerk responded. Plaintiff reports that he received the response on March 28, 2024. The mail was opened and inspected for contraband and skimmed outside of his presence by Defendant Brown. (*Id*., PageID.3–4.) Plaintiff states that the mail was also "photocopied with the mailroom retaining the original copy." (*Id.*, PageID.4.)

Prior to the above-discussed incident, Plaintiff alleges that, during 2023, he filed a motion for access to Friend of the Court and Child Protective Services Records in the Oakland County Circuit Court, Case No. 1995-492546-IM. (*Id*.) He served copies of that motion by mail on the attorneys of record, including Carl M. Woodard. (*Id*.) The mailing was returned as undeliverable, apparently months later. (Envelope, ECF No. 1-1, PageID.10.) On May 2, 2024, Plaintiff was called to the control center to receive the returned mail. (Compl., ECF No. 1, PageID.4.) The envelope had been opened and, presumably, inspected for contraband and skimmed by Defendant Unknown Party #1. (*Id.*, PageID.4–5.)

2

Plaintiff contends that Defendants opened his mail outside of his presence in violation of the MDOC's mail policy, MDOC Policy Directive 05.03.118, Prisoner Mail (eff. Nov. 6, 2023). Plaintiff specifically quotes from and relies upon that policy in his complaint. Plaintiff also contends that Defendants' actions violated Plaintiff's First Amendment rights. He seeks punitive, compensatory, and nominal damages in an unstated amount, as well as injunctive relief preventing Defendants from opening Plaintiff's legal mail outside of his presence and requiring the MDOC to afford legal mail that is returned to sender "special handling."

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

In reviewing Plaintiff's complaint, the Court "must accept as true all of the factual allegations." *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 508 n.1 (2002). The Court is not required to accept as true "unwarranted factual inferences," *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008), nor must the Court accept as true "a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"When deciding whether a complaint fails to state a claim upon which relief can be granted, a court should typically limit itself to the well-pleaded allegations within the complaint's four corners." *Blackwell v. Nocerini*, 123 F.4th 479, 486 (6th Cir. 2024) (internal quotation marks and citations omitted). Here, the Court will look outside the allegations in the complaint to determine whether Plaintiff has stated a claim pursuant to a couple of recognized exceptions to the "four corners" rule.

First, a Court reviewing a complaint to determine whether it states a claim may look to documents or public records "if a plaintiff references or quotes" such documents or records in the complaint. *In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 466 (6th Cir. 2014); *see also Twombly*, 550 U.S. at, 568 n.13 (noting that the district court "was entitled to take notice of the full contents of the published articles referenced in the complaint"); *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008) (noting that "a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims").

Plaintiff relies upon and quotes from MDOC Policy Directive 05.03.118 regarding prisoner mail. (Compl., ECF No. 1, PageID.2–4.) The Court takes judicial notice of the prisoner

4

mail policy directive in effect at the time of the events alleged in Plaintiff's complaint. The MDOC's policy directives are a proper subject of judicial notice under Federal Rule of Evidence 201(b). *See Toth v. Grand Trunk R.R.,* 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"); *see also International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transp. Corp*., 394 F.2d 36, 40 (6th Cir. 1968) (noting that "a [c]ourt may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b). The content of the policy directives at issue is not subject to reasonable dispute. They are published by the MDOC on its publicly available government website. The Court notes that taking judicial notice of the policy language says nothing about whether Defendants complied with the policy.

Second, Plaintiff has attached a copy of the envelope from the returned undeliverable mail as an exhibit to his complaint. "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). Thus, the Court may consider documents that are attached to a *pro se* complaint when considering, on preliminary screening, whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's complaint to

determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff contends that Defendants have violated his First Amendment rights.

### A.    The ICF Mailroom

Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person."). And, obviously, because ICF is not an entity separate from the MDOC, it is not a "person" under § 1983 either. *See, e.g., Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July

28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983");

*Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016)

(same). Similarly, the ICF Mailroom is not a "person" acting under color of state law. *See, e.g.*,

*Austin v. Mail Room at Halawa Corr. Fac.*, No. 11-00708 JMS/KSC, 2011 WL 6012159, at *2

(D. Haw. Dec. 1, 2011) (stating "a . . . prison mailroom is not a 'person' amenable to suit under

§ 1983"); *Aurel v. Mailroom North Branch*, No. ELH-14-2813, 2016 WL 3957647, at *10 (same);

*Cage v. Johnson,* No. 4:17CV3115, 2017 WL 6557469, at *2 (D. Neb. Dec. 22, 2017) ("[T]he

LCDC Mailroom is not a 'person' subject to suit under § 1983."); *Gonzales v. GEO Mail Room of*

*Guadalupe Cnty. Corr. Fac.*, No. CV 18-00065 JCH/SCY, 2020 WL 4544798, at *3 (D. N.M.

Aug. 6, 2020) (holding that "[t]he Guadalupe County Correctional Facility, including its mailroom,

is not an entity that is capable of being sued"); *Littleton v. Hicks*, No. 6:20-cv-4479-TMC-KFM,

2021 WL 1391569, at *3 (D. S.C. Mar. 25, 2021) (holding that "the York County Detention Center

Mailroom is not a 'person' under § 1983"), *R&R adopted*, 2021 WL 1390806, Apr. 13, 2021).

Therefore, Plaintiff has failed to state a claim against the ICF Mailroom upon which relief may be

granted.

### B.    Individual Defendants

Unknown Party #1 and Unknown Brown are "persons" amenable to suit under § 1983.

### 1.    Claims for Injunctive Relief

Plaintiff asks the Court to enjoin Defendants "from continuing to open Plaintiff's legal mail

outside of his presence" and to compel them "to afford legal mail that is returned to sender . . .

special handling upon receipt." (Compl., ECF No. 1, PageID.5–6.) The Sixth Circuit has held that

transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See*

*Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for

injunctive and declaratory relief became moot when the prisoner was transferred from the prison

7

about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at ICF, which is where he avers that the individual Defendants are employed. Thus, Plaintiff cannot maintain his claims for injunctive relief against the individual Defendants. They are properly dismissed as moot.

### 2.    Claims for Damages

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 501 U.S. 410, 427 (1993)) ("[T]he use of the mails is as much a part of free speech as the right to use our tongues." (internal quotation marks omitted)).

But a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Pell*, 417 U.S. at 822); *see also Turner v. Safley*, 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell*, 417 U.S. at 822–23; *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)).

The MDOC policy directive regarding mail reflects its protected status. The MDOC's prisoner mail policy acknowledges that prisoners are "permitted to send and receive uncensored

mail to or from any person or organization unless the mail violates this policy or Administrative Rule 791.6603." MDOC Policy Directive 05.03.118 ¶ D (eff. Nov. 6, 2023). Nonetheless, a significant goal of the policy directive is to prevent contraband from entering the prison. To achieve that goal, incoming mail is subject to search.

The prisoner mail policy directive identifies several categories of prohibited incoming mail. *Id*. ¶¶ OO–UU. The categories include "mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." *Id*. ¶ PP. With one exception, all incoming mail is "opened in one location and inspected . . . to determine if it contains money, controlled substances, or other physical contraband." *Id*. ¶ EE. Physical contraband is confiscated prior to delivery of the mail. *Id*. The policy directive requires that the written content be "skimmed, and if it appears from skimming the content that the mail may violate th[e] policy, the item shall be read to determine if it is allowed." *Id*.

The one exception to the general practice of opening and searching all mail in one location exists for "mail requiring special handling." *Id.* ¶ EE. The most significant category of mail requiring special handling is "legal mail." *Id*. ¶¶ HH–JJ.

The Sixth Circuit Court of Appeals, when considering the MDOC's mail policies, defined legal mail "to include delivery of legal materials to a prisoner, properly and clearly marked as legal materials, via the U.S. Postal Service or alternative private courier services, and hand delivery." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). The MDOC has, over the years, modified its definition of incoming legal mail to include the following:

> Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the

> Legislative Corrections Ombudsman is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above.

MDOC Policy Directive 05.03.118 ¶ HH (eff. Nov. 6, 2023). The fact that incoming mail falls within the ¶ HH definition does not, standing alone, require special handling. Special handling is only required if the prisoner requests in writing that his incoming legal mail receive special handling. *Id*. ¶ II.

Plaintiff alleges that he completed and filed a "request for special handling form" when the MDOC took him into custody during the fall of 2014. (Compl., ECF No. 1, PageID.3.) Plaintiff alleges further that his request for special handling has never been revoked or rescinded since it was filed. (*Id*.) Accordingly, the Court concludes that Plaintiff's "legal mail" is entitled to "special handling." The question as to whether the mail at issue here was "legal mail" remains. In that regard, "what constitutes 'legal mail' is a question of law." *Sallier v. Brooks*, 343 F.3d 868, 871 (6th Cir. 2003). And the Court is not required to accept as true Plaintiff's characterization of the mail at issue as "legal mail" because that is a legal conclusion.

### a.    Mail from the Chippewa County Clerk Opened by Defendant Brown

Plaintiff does not allege anything about the external appearance of the mailing from the Chippewa County Clerk other than the fact that it was from the Chippewa County Clerk. In *Sallier*, 343 F.3d at 868, the Sixth Circuit considered whether mail from a county clerk was "legal mail" requiring "special handling." The Court concluded, as a matter of law, it was not:

> We find that as a general matter . . . mail from a county clerk . . . does not implicate constitutionally protected legal mail rights. Given the nature of a county clerk's office and given that there was no specific indication to the contrary marked on the envelope, the correspondence from the county clerks . . . in this case could be opened pursuant to the regular mail policy without violating Sallier's First Amendment rights.

10

*Id*, at 876; *see also Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009) (noting that mail from county clerks is not "legal mail"). Therefore, Plaintiff's allegations fail to state a claim against Defendant Brown.

      **b.**      **Returned Undeliverable Mail Opened by Defendant Unknown Party #1**

As to the returned undeliverable mail at issue in this case, Plaintiff provides the envelope containing the undeliverable mail as an exhibit to his complaint. (ECF No. 1-1, PageID.10.) Plaintiff contends that because the intended recipient "Carl M. Woodard" was designated "Esq." by Plaintiff when he mailed the envelope, Unknown Party #1 should have known it was correspondence between Plaintiff and an attorney and, thus, was "legal mail" subject to special handling. (Compl., ECF No. 1, PageID.4.) Plaintiff relies on Black's Law Dictionary to define the term "esquire" as "a title of courtesy commonly appended after the name of a lawyer." (*Id.*) But even Plaintiff acknowledges that it is Black's fourth definition of the term and the other three definitions do not require the esquire to be a lawyer. *Esquire*, Black's Law Dictionary, (12th ed. 2024).

The Sixth Circuit Court of Appeals has looked to the definition in the Michigan Administrative Code when considering whether mail sent to or from a prisoner incarcerated with the MDOC is "legal mail." *See, e.g.*, *Jones*, 569 F.3d at 268 (noting that the "Michigan Administrative Code defines 'legal mail' as correspondence with courts, attorneys, public officials, the office of the legislative corrections ombudsman, the department of correction's central office staff, and staff of the institution in which the prisoner is incarcerated. *See* Mich. Admin. Code R. 791.6603(7) (Nov. 15, 2008)"); *Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994) (looking to the Michigan Administrative Code for the definition of "legal mail" in Michigan). Moreover, "the determination of whether mail is considered legal mail depends not only on the

nature of the sender, but on the appearance of the mail [as well as] the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020), *aff'd*, No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. June 9, 2021) (noting that "the mail must be 'properly and clearly marked as legal materials,'" and "while the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney'" (citation omitted)).

The prison official must have some means of knowing that the correspondence is a protected communication. Thus, in *ACLU Fund v. Livingston Cnty.*, 796 F.3d 636 (6th Cir. 2015), the Sixth Circuit determined that the letters at issue were protected in significant part because of the information on the envelope: "the letters were addressed to a specific inmate, clearly marked 'legal mail' and included the name and bar number of a licensed Michigan attorney." *Id*. at 644; *see also Kensu*, 87 F.3d at 174 (defining " 'legal mail' to include delivery of legal materials to a prisoner, ***properly and clearly marked as legal materials*** . . ." (emphasis added)).[1]

Here, Plaintiff's allegations and the envelope reveal that the only possible indicator of protected status is the ambiguous abbreviation "Esq." That is not the sort of clear marking that

---

[1] More generally, in *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court commented:

> We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.

*Id*. at 576–77; *see also Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009) (commenting on 28 C.F.R. § 540.19(b), which limits special handling by the Federal Bureau of Prisons to mail where "the envelope is marked with the attorney's name and an indication that the person is an attorney," and "the front of the envelope is marked 'Special mail-Open only in the presence of the inmate'").

would reveal to Unknown Party #1 that this mailing required special handling. At best, perhaps Unknown Party#1 should have determined whether Mr. Woodard was an attorney by looking him up in the State of Michigan Bar Directory.[2] But such a "should have . . . framework" suggests a "classic negligence formulation." *Doe v. Jackson Loc. Sch. Dist. Bd. of Ed.*, 954 F.3d 925, 932 (6th Cir. 2020). Allegations of negligent conduct are insufficient to state a claim under § 1983 for violation of Plaintiff's First Amendment rights. *See*, *e.g., Loyer v. Whorton*, No. 1:13cv-773, 2014 WL 4626014, at *3 (S.D. Ohio, Sept. 15, 2014); *Smith v. DeVerney*, No. 10-12955, 2013 WL 6182671, at *2–3 (E.D. Mich. Nov. 26, 2013); *Kelley v. Hinsa*, No. 2:06-cv-211, 2007 WL 2814949, at *6 (W.D. Mich. Sept. 25, 2007).

Accordingly, Plaintiff has failed to state a claim against Unknown Party #1.

## Conclusion

Plaintiff's motion to screen the complaint and refer the case to the Court's *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program (ECF No. 5) will be granted in part in that the Court has screened Plaintiff's complaint and will be denied in all other respects. Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that

---

[2] That effort, however, would not have favored "special handling." Mr. Woodard has been continuously suspended from the practice of law in Michigan since May 4, 2021. Notice of Suspension and Restitution, Case No. 23-73-GA, n.1 (Mich. Att'y Discipline Bd. Feb. 22, 2024), *available at* https://records.adbmich.org/adbmich/no/en/item/7222/index.do (last visited Jan. 6, 2025). He was not an attorney when Plaintiff sent him the envelope, nor was he an attorney when the envelope was returned as undeliverable.

Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:    January 14, 2025                            /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge

14